UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
BRUCE STAFFORD,

                Plaintiff,                MEMORANDUM AND ORDER
                                                     18-CV-5939 (ILG) (SJB)

    v.

INCORPORATED VILLAGE OF SAG HARBOR,
THOMAS GARDELLA, TOWN OF SOUTHAMPTON,
ANDREW BLODORN,

                Defendants.
-------------------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiff Bruce Stafford (**"Plaintiff"**) brings this action pursuant to 42 U.S.C. § 1983 against Defendants the Incorporated Village of Sag Harbor (**"Sag Harbor"**, the **"Village"**, or the **"Village of Sag Harbor"**), Thomas Gardella (**"Gardella"**), the Town of Southampton (**"Southampton"**, the **"Town"**, or the **"Town of Southampton"**), and Andrew Blodorn (**"Blodorn"**). (Compl., ECF No. 1). The Town and Blodorn (together, the **"Southampton Defendants"**) move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 23). For the reasons that follow, the motion is granted.

## BACKGROUND

      Plaintiff was at all relevant times a volunteer member of the Sag Harbor Fire Department (the **"SHFD"** or the **"Department"**). (Compl. ¶ 17). Blodorn was another volunteer with the SHFD, as well as a full-time officer of the Southampton Town Police Department (**"STPD"**) in nearby Southampton. (*Id.* ¶¶ 4, 18).

      Plaintiff's complaint is extraordinarily difficult to comprehend, weaving back and forth between multiple, seemingly disconnected episodes and describing them outside of

1

chronological order. However, it appears that his underlying grievance centers on two particular incidents, both of which occurred in March 2016.

First, Plaintiff alleges that, on or about March 20, 2016, Blodorn, while in police uniform, verbally confronted and "cursed" at Plaintiff in the presence of Plaintiff's teenage child. (Compl. ¶¶ 62-64). Blodorn also allegedly told Plaintiff, "I can write you" with regard to a previous traffic violation by Plaintiff. (*Id.* ¶ 65). No other details concerning what was said between Plaintiff and Blodorn are provided. Plaintiff alleges that "Blodorn holds a longtime grudge" against him due to competition between Blodorn's family business and Plaintiff's business. (*Id.* ¶ 72). It is implied that Blodorn improperly responded to a police call in or near Sag Harbor as a pretext to go to Sag Harbor and confront Plaintiff. (*Id.* ¶¶ 75-79).

Second, Plaintiff alleges that, at some point in March 2016, he was "improperly" charged with a violation of the by-laws of the SHFD and disciplined by the Department's board of trustees, resulting in his suspension from the Department. (*Id.* ¶¶ 56-58). Although it is difficult to piece together, it appears that these charges were based on both the March 20, 2016 incident with Blodorn as well as an earlier incident in January 2016 where a former member of the Department complained "about [Plaintiff's] driving." (*Id.* ¶¶ 159, 180-183). Plaintiff asserts that nothing in the by-laws authorized his suspension. (*Id.* ¶ 60). He claims that an unnamed "superior officer" of the STPD "was present" when Gardella, the Chief of the SHFD, "initiated" the disciplinary process against him. (*Id.* ¶ 100). It is also suggested that an attorney for the Town of Southampton may have been involved, in some way, in these disciplinary proceedings. (*Id.* ¶ 185). Plaintiff insinuates that the proceedings were in the nature of a "selective enforcement" because the Department never disciplined Blodorn for his behavior toward Plaintiff. (*Id.* ¶¶ 61, 67, 70).

Interspersed in Plaintiff's complaint are scattered references to various illegal acts by Defendants. Plaintiff alleges that, on the date Blodorn allegedly confronted and cursed at him, Blodorn had improperly recorded his time in a way that would allow him to claim credit for SHFD pension purposes, even though he was on duty as a Southampton police officer. (*Id.* ¶¶ 80-86). It is vaguely implied that Gardella and the Village of Sag Harbor were aware of and tolerated such improper recordkeeping practices by Blodorn and others. (*Id.* ¶¶ 69, 83). Plaintiff also alleges that under Gardella's leadership, the SHFD has begun to disregard its governing by-laws, though he cites no examples, other than his own suspension from the Department. (*Id.* ¶¶ 50-51, 55). Finally, Plaintiff alleges that the Town of Southampton was, at all relevant times, "in the midst of massive dysfunction and public scrutiny" based on allegations of political favoritism and "suppressing police misconduct." (*Id.* ¶¶ 95-96).

Plaintiff asserts the following constitutional claims: (1) procedural due process violations by the Village and Gardella (*id.* ¶¶ 166-179); (2) First Amendment violations by the Village, Gardella, the Town, and Blodorn (*id.* ¶¶ 180-187); (3) Equal Protection Clause violations by the Village and Gardella (*id.* ¶ 188); (4) "abuse of process" by the Village and Gardella (*id.* ¶¶ 189-192); and (5) substantive due process violations by the Village, Gardella, the Town, and Blodorn (*id.* ¶¶ 193-195). The Southampton Defendants moved to dismiss the two claims against them on May 31, 2019. (ECF No. 23). No motion to dismiss has been brought by the Village or Gardella.

## DISCUSSION

In reviewing a motion to dismiss, the district court must accept the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Here, Plaintiff has not even come close to stating a plausible First Amendment or substantive due process claim against the Southampton Defendants under 42 U.S.C. § 1983.

Plaintiff's First Amendment claim appears to hinge on the theory that the disciplinary proceedings against him were launched in an effort to prevent him from commenting on matters of "public concern," including Blodorn's conduct on March 20, 2016, the improper recordkeeping practices in which he engaged, and the Department's failure to discipline Blodorn. (Compl. ¶¶ 183-185). The elements of a First Amendment retaliation claim have not been precisely stated in this Circuit. *See Mangino v. Incorporated Village of Patchogue*, 739 F.Supp.2d 205, 247 n. 36 (E.D.N.Y. 2010) ("[T]he Second Circuit has described the elements of a First Amendment retaliation claim differently in different contexts"). Nevertheless, for a public employee to prevail on a First Amendment retaliation claim under § 1983, the employee must generally show: (1) that he "engaged in constitutionally protected speech or conduct," *Caraccilo v. Village of Seneca Falls, N.Y.*, 582 F.Supp.2d 390, 405 (W.D.N.Y. 2008), or otherwise "has an interest protected by the First Amendment," *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); (2) that he engaged in such speech or conduct in his capacity as a "private citizen," rather than "pursuant to [his] official duties" as a "public employee," *Garcetti v. Ceballos*, 547 U.S. 410, 421-422 (2006); (3)

4

that the "defendants' actions were motivated or substantially caused by his exercise of that right," *Kuck*, 600 F.3d at 168 (quoting *Curley*, 268 F.3d at 73); and (4) that the "defendants' actions effectively chilled the exercise of his First Amendment right," *id.* (quoting *Curley*, 268 F.3d at 73).

Here, Plaintiff fails to support any of the elements of his First Amendment claim with adequate factual enhancement. No description is given, for example, of the precise nature of the charges against Plaintiff, the evidence adduced at the disciplinary hearing, or any circumstances suggesting that Plaintiff was threatening to 'blow the whistle' on Blodorn or the STPD. There are simply no facts alleged from which one could reasonably infer that Plaintiff engaged or intended to engage in protected speech or that anyone intended to censor that speech. Furthermore, the complaint alleges no causal nexus between the actions of the Southampton Defendants and these disciplinary proceedings. Blodorn himself did not cause the proceedings to be initiated or procure Plaintiff's suspension from the SHFD. And although Plaintiff alludes obliquely to the involvement of certain agents of the Town of Southampton, he does not explain what role they played, if any, in the allegedly wrongful decisions to commence disciplinary proceedings or to suspend him.

Plaintiff's substantive due process claim fares no better. The claim is not tethered to any particular legal theory or factual predicate; the complaint merely asserts that Defendants' conduct "reach[es] the standard of misconduct and intentional misuse of governmental authority" embraced by the concept of substantive due process. (Compl. ¶¶ 193-195). This threadbare recitation leaves the indelible impression that Plaintiff's substantive due process claim is asserted as an afterthought, a last-ditch effort to salvage Plaintiff's case should his other claims fail.

The touchstone of substantive due process, of course, is misconduct that shocks the conscience. *See Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 431 (2d Cir. 2009) ("To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' ") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). No such misconduct has plausibly been alleged here. Although Blodorn's alleged behavior on March 20, 2016, as described in the complaint, was rude and unprofessional, the complaint does not provide enough detail or context for the Court to conclude that such behavior rises to the level of a constitutional deprivation. *See Lawtone-Bowles v. Katz*, No. 14-CV-606 (CS), 2016 WL 6834018, at *8 n. 12 (S.D.N.Y. Nov. 17, 2016) ("[V]erbal harassment or threats alone do not constitute a violation of any federally protected right and are therefore not actionable pursuant to 42 U.S.C. § 1983") (quoting *Bowles v. State*, 37 F.Supp.2d 608, 613 (S.D.N.Y. 1999)); *Liner v. Ward*, 754 F.Supp. 32, 34 (S.D.N.Y. 1991) ("[A]llegations of rude, inconsiderate and insulting language by a police officer … do not give rise to a constitutional violation"). Nor has Plaintiff adequately alleged that the SHFD disciplinary proceedings against him violated substantive due process. As noted previously, there are no non-conclusory allegations in the complaint permitting the reasonable inference that these disciplinary proceedings were invidious or retaliatory, and even if they were, the facts alleged in the complaint do not establish a causal connection between the acts of the Southampton Defendants and either the commencement of disciplinary proceedings or Plaintiff's suspension from the Department.

The Southampton Defendants' additional arguments concerning qualified immunity (as to Blodorn) and *Monell* liability (as to the Town) (Def. Mem. at 7-9, ECF No. 23-2 at 8-10),

whatever their merit, need not be examined in light of the patent deficiencies in the complaint described above.

Because Gardella and the Village have not moved to dismiss, the Court does not decide whether Plaintiff's claims against these remaining Defendants warrant dismissal as well.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the First Amendment and substantive due process claims against Blodorn and the Town of Southampton is **GRANTED**.

SO ORDERED.

Dated:     Brooklyn, New York
         August 22, 2019

/s                                
I. Leo Glasser               U.S.D.J.